UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Luis Polo, being duly sworn, do hereby depose and state the following:

1. I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006. As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States. I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters. Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2. My investigation reveals that, on or about Thursday, March 13, 2025 through Friday, March 14, 2025, in the District of Puerto Rico and within the jurisdiction of this Court, **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS, and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ**, aiding and abetting each other and other unknown persons, did knowingly, willfully and intentionally bring to the United States thirty-five (35) aliens, knowing that said persons were aliens, at a place other than a designated port of entry, and at a place other than as designated by the Secretary of Homeland Security, pursuant to 6 U.S.C. §§ 202(3), 202(4), and 557. All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i) & (v)(II).

3. My investigation also reveals that, on or about Friday, March 14, 2025, in the District of Puerto Rico, and within the jurisdiction of this court, **[1] JOSE ANTONIO DE LEON-PACHE**, improperly entered the United States by boat, at "Combate Beach" Cabo Rojo, Puerto Rico, at any time or place other than as designated by immigration officers as well as

having eluded examination or inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(1) & (a)(2).

4. My investigation further reveals that, on or about Friday, March 14, 2025, in the District of Puerto Rico, and within the jurisdiction of this court, **[2] MELVIN DIAZ-LINAS**, re-entered the United States illegally by boat at "Combate Beach" Cabo Rojo, Puerto Rico, after having previously been removed from the United States pursuant to a removal order, in violation of 8 U.S.C. § 1326(a).

5. My investigation further reveals that, on or about Friday, March 14, 2025, in the District of Puerto Rico, and within the jurisdiction of this court, **[3] MIKILENDY ESPIRITUSANTO-MARTINEZ**, improperly entered the United States by boat, at "Combate Beach" Cabo Rojo, Puerto Rico, at any time or place other than as designated by immigration officers as well as having eluded examination or inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(1) & (a)(2).

6. I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

**PROBABLE CAUSE**

7. On or about Friday, March 14, 2025, at approximately 10:20 a.m., United States Border Patrol (USBP) Ramey Sector Dispatch received information from United States Coast Guard (USCG) Air Station Borinquen informing that one of their USCG Air Unit # 6033, detected a Maritime Smuggling Event (MSE) – Landing at "Los Cocos Beach" in Mona Island,

Puerto Rico.

8. A yawl type, blue in color vessel, with two outboard engines attached was found.

9. They estimated approximately thirty (30) suspected / possible illegal migrants.

10. USCG notified USBP & Mona Park Rangers from the Department of Natural Resources (DRNA) about the landing.

11. DRNA were able to locate six (06) migrants. Other twenty-four (24) were still hiding in different places throughout Mona Island. Ultimately, a total of (30) subjects were encountered and apprehended at Mona Island.

12. Meanwhile, on Friday, March 14, 2025, at approximately 06:40 p.m., (USBP) Ramey Sector Dispatch received information from Puerto Rico Police Department (PRPD) Marine Unit (FURA) from Cabo Rojo, Puerto Rico, indicating that their marine unit spotted a vessel landing in "Punta Aguila Beach", near "Combate Beach" in Cabo Rojo, Puerto Rico.

13. U.S. Border Patrol Agents from Ramey Station were informed and responded to the area.

14. At approximately 08:10 p.m., USBP was informed by Customs & Border Protection (CBP) Air & Marine Office (AMO) Agents that the Cabo Rojo Municipal Police encountered a United States Citizen (USC) transporting three (03) illegal aliens on the back of his vehicle, to wit, a red SUV Jeep Grand Cherokee 2011 Limited Edition.

15. Two (02) of the three (03) illegal aliens encountered during the vehicle stop of the red SUV by the Cabo Rojo Municipal Police were identified as **[1] JOSE ANTONIO DE LEON-PACHE and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ.**

16. Five (05) additional subjects, including **[2] MELVIN DIAZ-LINAS**, were arrested throughout the night in the area of Combate, Cabo Rojo for a total of eight (8) subjects

3

found on the main island of Puerto Rico.

17. On Saturday, March 15, 2025, the thirty (30) subjects that had been encountered on Mona Island by USCG, were brought to the USBP Ramey Station in Aguadilla for further investigation, processing, and removal proceedings. Initially, these thirty (30) subjects encountered on Mona Island were thought to be unrelated to the eight (08) subjects encountered on the main island of Puerto Rico. After extensive interviews of all subjects—thirty-eight (38) in total when including **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS, [3] MIKILENDY ESPIRITUSANTO-MARTINEZ**—it was revealed that they were all coming in the same vessel from the Dominican Republic to the United States. The vessel had stopped in Mona Island because they were having technical issues with one of the vessel motors, but the crew in charge of the trip—namely **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS, [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** and other unknown individuals—decided to leave for the main island of Puerto Rico after suspecting they had been observed/discovered by law enforcement. Thirty (30) subjects were left stranded on Mona Island.

18. All thirty-eight (38) subjects were transported to USBP Ramey Station in Aguadilla, Puerto Rico for further investigation, processing & removal proceedings. They all freely and voluntarily admitted to Border Patrol Agents that they were illegally present in the United States. Thirty-one (31) of the subjects admitted they were nationals and citizens of Haiti, and eight (08) of the subjects—including **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ**— admitted they were nationals and citizens of the Dominican Republic.

19. Multiple subjects from the group of immigrants that were left stranded in Mona

4

Island and the group of immigrants that arrived at the main island of Puerto Rico, identified **[1] JOSE ANTONIO DE LEON-PACHE** as the "organizer" of the trip, claiming they paid him $5,000 Dominican Pesos prior to commencing the trip or promised to pay him directly that amount after the trip ended. On more than one occasion during the trip, **[1] JOSE ANTONIO DE LEON-PACHE** reminded the aliens "you need to pay me, you owe me." In addition, multiple subjects, from the group of immigrants that were left stranded in Mona Island and the group of immigrants that arrived at the main island of Puerto Rico, stated that all throughout the voyage that departed from the Dominican Republic and including when they stopped at Mona Island and when the vessel continued to the main island of Puerto Rico, he was in charge of handling a compass and giving directions to the subject that was navigating the vessel. As advanced, **[1] JOSE ANTONIO DE LEON-PACHE** was encountered by law enforcement at the main island of Puerto Rico during the vehicle stop of the red SUV Jeep Grand Cherokee 2011 Limited Edition that was being driven by a United States citizen.

20. In addition, multiple subjects from the group of immigrants that were left stranded in Mona Island and the group of immigrants that arrived at the main island of Puerto Rico, identified **[2] MELVIN DIAZ-LINAS** as the "enforcer", who on more than one occasion physically assaulted the subjects with a wooden stick. Furthermore, when the vessel arrived at Mona Island, **[2] MELVIN DIAZ-LINAS** threatened the subjects with a knife, ordering them to hide themselves if any helicopter or law enforcement came close. Subjects from the group of immigrants that continued the voyage to the main island of Puerto Rico, stated that **[2] MELVIN DIAZ-LINAS** was present and continued his role within the crew when they left Mona Island. **[2] MELVIN DIAZ-LINAS** was among the group of five (05) immigrants encountered and arrested by federal law enforcement throughout the night in the area of Combate, Cabo Rojo.

21. Furthermore, CBP agents seized **[3] MIKILENDY ESPIRITUSANTO-MARTINEZ's** cellphone device he had on his person. He later provided express and written consent for CBP agents to inspect and fully access the contents of his cellphone device and any of his social media accounts. CBP agents reviewed the cellphone of **[3] MIKILENDY ESPIRITUSANTO-MARTINEZ,** which revealed text and audio messages, and photographic evidence he sent to another unknown individual—prior to March 13, 2025—where he tells the unknown individual he needs help with money in order to get the gas containers, gasoline, and oil for the motors. Furthermore, on March 14, 2025, **[3] MIKILENDY ESPIRITUSANTO-MARTINEZ** received an audio message from an unknown subject, instructing him to look for a "red truck." **[3] MIKILENDY ESPIRITUSANTO-MARTINEZ** was also identified by multiple subjects from the group of immigrants that were left stranded in Mona Island and the group of immigrants that arrived at the main island of Puerto Rico as being part of the crew that was in charge of the trip. As advanced, **[3] MIKILENDY ESPIRITUSANTO-MARTINEZ** was encountered by law enforcement at the main island of Puerto Rico during the vehicle stop of the red SUV Jeep Grand Cherokee 2011 Limited Edition that was being driven by a United States citizen.

22. Upon arrival at Ramey Station, all subjects' fingerprints, including the fingerprints of **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS, and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ,** were entered into different law enforcement database systems.

23. As to **[1] JOSE ANTONIO DE LEON-PACHE and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** no prior immigration nor criminal history was found.

24. As to **[2] MELVIN DIAZ-LINAS,** record checks came back positive for the

following prior immigration & criminal history.

    a) On November 02, 2022, at approximately 12:30 a.m., **[2] MELVIN DIAZ-LINAS** was encountered by PRPD-FURA after making landfall at Cayo Ratones Island, in Joyudas, Cabo Rojo. **[2] MELVIN DIAZ-LINAS** was 01 of 15 detained subjects on that maritime smuggling event.

    b) A removal order was issued against **[2] MELVIN DIAZ-LINAS**.

    c) On November 04, 2022, **[2] MELVIN DIAZ-LINAS** was officially & physically removed / deported from the United States to the Dominican Republic from the Port of San Juan, Puerto Rico.

    d) On October 20, 2024, at approximately 12:30 a.m., **[2] MELVIN DIAZ-LINAS**, was encountered by Immigration & Customs Enforcement (ICE) Enforcement & Removal Office (ERO) Immigration Officers in York, PA. They received information from the Northwest Regional Police Department in Elizabethtown, PA. **[2] MELVIN DIAZ-LINAS** was encountered pursuant to a traffic stop and identified himself as Junior Linaz Diaz, and provided a Lawfully Admitted Resident (LPR) card that appeared to be fraudulent. The Police Officer requested assistance in positively identifying the subject. The Alien Registration Number also known as the A-Number on the LPR card he presented was bearing A# XXX-XXX-801. Record

      checks showed this number belonged to an Armenian female who was a naturalized United States citizen. **[2] MELVIN DIAZ-LINAS** also had a fraudulent Puerto Rico identification card and a social security card. The officer also discovered the subject also had a Dominican Republic (DR) identification card, identifying him as **[2] MELVIN DIAZ-LINAS** (DOB: 01/23/2000).

   e) On October 20, 2024, **[2] MELVIN DIAZ-LINAS'** prior final order of removal was reinstated.

   f) On December 17, 2024, **[2] MELVIN DIAZ-LINAS** was officially & physically removed / deported from the United States to the Dominican Republic from the Port of Miami, Florida.

25. Border Patrol Agents advised **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** of their right to legal representation and their right to speak with the Consular Officer of their native country, the Dominican Republic.

26. **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** admitted to being citizens and nationals of the Dominican Republic.

27. On or about March 14, 2025, **[1] JOSE ANTONIO DE LEON-PACHE,** improperly entered the United States—at the main island of Puerto Rico— at any time or place other than as designated by immigration officers as well as having eluded examination or inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(1) & (a)(2).

28. On or about March 14, 2025, **[2] MELVIN DIAZ-LINAS**, re-entered the United

States illegally—at the main island of Puerto Rico— after having previously been removed from the United States pursuant to a removal order, in violation of 8 U.S.C. § 1326(a).

29. On or about March 14, 2025, **[3] MIKILENDY ESPIRITUSANTO-MARTINEZ**, improperly entered the United States—at the main island of Puerto Rico— at any time or place other than as designated by immigration officers as well as having eluded examination or inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(1) & (a)(2).

30. On or about March 13, 2025 through March 14, 2025, in the District of Puerto Rico and within the jurisdiction of this court, **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ,** aiding and abetting each other and other unknown persons, did knowingly, willfully and intentionally bring to the United States over thirty-five (35) aliens, knowing that said persons were aliens, at a place other than a designated port of entry, and at a place other than as designated by the Secretary of Homeland Security, pursuant to 6 U.S.C. §§ 202(3), 202(4), and 557. All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i) & (v)(II).

31. **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS, and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** do not have any immigration documents allowing them to be in, to enter, re-enter and/or to remain in the United States legally, to include but not limited, the lack of express consent from the Secretary of the Department of Homeland Security, to reapply for admission into the United States. Furthermore, **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS, and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** were not inspected, admitted or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

32.     **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS, and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** do not have any petitions pending with the Bureau of Citizenship & Immigration Services.

33.     **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** were positively identified by migrants as persons in charge of the vessel that transported them from the Dominican Republic to Mona Island, Puerto Rico, which is a deserted island in the middle of the Mona Passage to leave them stranded, without any food, shelter, protection or water to drink. They also continued transporting the remaining group of migrants from Mona Island, Puerto Rico to Cabo Rojo, Puerto Rico.

34.     Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of violations of federal law by the above-mentioned subjects, to wit, **[1] JOSE ANTONIO DE LEON-PACHE** and **[3] MIKILENDY ESPIRITUSANTO-MARTINEZ** improperly entered the United States, at any time or place other than as designated by immigration officers as well as having eluded examination or inspection by immigration officers, in violation of 8 U.S.C. § 1325(a)(1) & (a)(2); **[2] MELVIN DIAZ-LINAS** illegally re-entered the United States after having previously been removed from the United States pursuant to a removal order, in violation of 8 U.S.C. § 1326(a); and **[1] JOSE ANTONIO DE LEON-PACHE, [2] MELVIN DIAZ-LINAS and [3] MIKILENDY ESPIRITUSANTO-MARTINEZ** aiding and abetting each other and other unknown persons, did knowingly, willfully and intentionally bring to the United States thirty-five (35) aliens, knowing that said persons were aliens, at a place other than a designated port of entry, and at a place other than as

designated by the Secretary of Homeland Security, pursuant to 6 U.S.C. §§ 202(3), 202(4), and 557, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i) & (v)(II).

_____
Luis Polo
Border Patrol Agent, United States Border Patrol

Sworn pursuant to FRCP 4.1 at  9:19 PM  by telephone, this  20th  day of March, 2025.

_____
Honorable Marcos E. López
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

11